## THERIOT et al. v. THERIOT'S HEIRS et al.

### No. 998.

Court of Appeal of Louisiana.   First Circuit.

June 30, 1932.

John B. Fournet, of Jennings, for appellants.

Miller & Miller, of Jennings, for appellees.

MOUTON, J.

The following opinion was rendered by the district judge in this case:

"This is a suit for the reduction of the purchase price of the sale of land, on the ground of shortage of acreage of the land conveyed.

"The plaintiffs, Charles Theriot, Hubert Theriot, Emare Theriot, and Clabert Richard, alleged that they purchased at a partition sale of the property owned by the widow and heirs of Albert Theriot, a tract of land which the parties thought to contain 96 acres, whereas in fact, the acreage actually conveyed was less than one-half the agreed amount.

"The widow and heirs of Albert Theriot were made defendants, as was John Miller, the Sheriff of Cameron Parish, who conducted the sale.

"The widow of Albert Theriot, Mrs. Anociade Theriot, defends this suit by alleging that the property in question was not community property, formerly owned by her and her husband, but that it was his separate property, in which she had no interest.

"The Sheriff, John Miller, urges in defense that he personally had no interest in the property in question, but that he sold it pursuant to a direct order of court.

"The other defendants, who as heirs of Albert Theriot, owned the property, and provoked the partition sale, plead in defense that the plaintiffs had full knowledge of the shortage in the acreage at the time they purchased the property.

"The judgment in the Succession of Albert Theriot, sending the heirs into possession, shows that the property in question was the separate property of Albert Theriot, and that his widow, Mrs. Anociade Theriot, never had any interest in it. The record further shows that the land, which is the subject matter of this case, was inherited by Albert Theriot from his father. (See Act of Partition, dated December 18, 1906, passed before John Wetherill.) In view of these facts, it is clear that there must be judgment rejecting plaintiffs' demands against Mrs. Anociade Theriot.

"The sheriff, selling property under an order of court, to effect a partition, does not warrant title or the amount of acreage named in the deed. It is clear, likewise, that no judgment can be rendered against him.

"On March 7, 1893, Villeor Theriot acquired from Emanuel Sturlese:

"'SE¼ of NE¼ Sec. 3, Township 15 S of R 6 W, N½ of NE¼, SE¼ of NW¼ of Sec 2, and the N½ of NW¼ Sec 1, Township 15 South of R 6 West, NE¼ of NE¼ Sec 3 and N½ of NW¼ of Sec. 2, Township 15 S of R 6 West, SW¼ of NW¼, NW¼ of SW¼ Sec 2, NE¼ of SE of Sec 3 Township 15 S of R 6 W., South Western Land District of La., containing Four hundred and eighty (480) acres of land more or less.'

"The deed mentioned declared:

"'It is further agreed between the contracting parties that if any of the above described land is situated South of the Mermentau River it is not included in this act of sale and is reserved by the said Emanuel Sturlese.'

"Villeor Theriot died, leaving five sons as his heirs, Charles, Albert, Stanville, Numa and Adolph Theriot. Charles Theriot is one of the present plaintiffs, and Albert Theriot is the deceased father of all the defendants, with the exception of Mrs. Anociade Theriot, and the sheriff, John Miller.

"On December 8, 1906, Mrs. Cleonise Theriot, widow of Villeor Theriot, and their five sons, Charles, J. S., Numa and Adolph Theriot, made an amicable partition of the property belonging to Mrs. Cleonise Theriot, and her deceased husband. In this partition the 480 acre tract above described was divided among the five sons, each taking a certain part.

"On December 26, 1914, Mrs. Cleonise Theriot and her five sons mentioned in the preceding paragraph, entered into an amended and 'supplemental' partition, wherein the 480 acre tract was divided into five lots, each of the five sons taking one of the lots.

"Albert Theriot, deceased father of all but two of the defendants, as mentioned, took Lot 4, and Charles Theriot, one of the present plaintiffs, took Lot 5. It will be seen from the following copy of the plat, showing the partition of the 480 acre tract, which plat appears in the act of partition, that each son's lot was marked as containing 96 acres, and the act itself so declared:

"Albert Theriot, the owner of Lot 4, died, and at a sale to effect a partition between the heirs of Albert Theriot, Lot 4 was purchased by Charles Theriot, his sons, Hubert and Emare Theriot, and his son-in-law, Clabert Richard.

"Evariste Nunez, one of the unsuccessful bidders on the property, testified that two or three days after the plaintiffs acquired Lot

| Lot 5 Charles Theriot 96 Acres | Lot 4 Albert Theriot Acres 96 | Lot 3 J.S. Theriot 96 Acres | Lot 2 Numa Theriot 96 Acres | Lot 1 Adolph Theriot 96 Acres |
|---|---|---|---|---|
| NE1/4 NE1/4 Sec 3 | NW1/4 NW1/4 Sec 2 | NE1/4 NW1/4 Sec 2 | NW1/4 NE1/4 Sec 2 NE1/4 NE1/4 Sec 2 | N1/2 NW1/4 Sec 1 |
| | | 48    48 | | |
| SE1/4 NE1/4 Sec 3 | SW1/4 NW1/4 Sec 2 | SE1/4 NW1/4 Sec 2 | | |
| NE1/4 SE1/4 Sec 3 | NW1/4 SW1/4 Sec 2 | | | |

"In the last mentioned act, the parties provided: " * * * the appearers declared that they each will ever warrant the title to each other of the lands allotted to each as hereinafter set forth.'

"T. H. Mandell, Civil Engineer, was appointed by the Court to survey the property in question, and the following is a copy of his plat, which shows the location of the Mermentau River, and that there are only 44.76 acres in Lot 4:

4, he talked with Emare Theriot, who said he knew of the shortage in Lot 4 when he bid it in. (Tr. 28, 30, 44.)

"Eloi Theriot swore that right after the Mandell survey, Emare Theriot admitted that he knew the land was short when he purchased it, (Tr. 49) and that Emare Theriot said he was willing to deed the land back, in return for the purchase price, if his father, Charles Theriot, was willing. (Tr. 49, 50.)

"Alfred Richard, a very intelligent and re-

sponsible disinterested witness, testified that while he was the president of, and the plaintiff, Charles Theriot, a member of the board of drainage commissioners of a drainage district, embracing the land in question, the drainage board had made a survey of all lands in the district in 1912, in order to determine the exact acreage in the district, since it was contemplated to levy an acreage tax, and it was necessary for the board to have this information in order to know how much money would be available. An engineer named Everette made this survey, which showed the shortage in Lot 4, and that the original tract embraced land to the south of the river. Richard further testified that the board, including Charles Theriot, met with the surveyor on the south of the river, and Richard said "there was lots of talk," and a general discussion, as a result of the survey showing the shortage. (Tr. 34 to 43).

"That Charles Theriot had knowledge of the results of the Everette survey, mentioned by Alfred Richard, appears from the following extract from the testimony of Charles Theriot:

" 'Q. Have you any knowledge of a survey of that tract of land having been made subsequent to the Dick Smith Survey?

" 'A. Yes. Certainly, if we hadn't had a survey made we wouldn't have known whether we were right or wrong in our lands.

" 'Q. When was that survey made?

" 'A. I don't know, but it was one of those men from above, that I think we called Everett.

" 'Q. Mr. Theriot, the survey you have just referred to as having been made by Mr. Everett, was that not made in 1913, for the purpose of ascertaining how much each of you had in the district?

" 'A. I don't know. I don't know how much land we have in the district.' (Tr. 12.)

"It is quite plain from the testimony of Charles Theriot that he knew at the time of the sale that no land to the south of the river passed under the sale. (Tr. 8.)

"As previously stated, Charles Theriot was one of the five sons of Vellior Theriot (Tr. 6), and Charles Theriot took part, in 1914, in the amicable partition of the lands inherited from his father, who acquired the land in question under a deed which stated that no land south of the river was conveyed. (Tr. 7.) See act of partition, dated December 26, 1914.

" "Since Charles Theriot acquired Lot 5 in this partition proceeding by inheritance from his father, coupled with his warranty to his deceased brother, Albert Theriot, that the latter was the owner of 96 acres in Lot 4, Charles Theriot must be held to have constructive knowledge of the clause in the deed reserving from the sale to his father of the property in question, all land south of the river.

"In this connection, it is important to note that when this plaintiff was under cross examination, he was asked if at the time of his purchase of Lot 4, he did not know that his father, in acquiring the 480 acre tract, which embraced Lot 4, did not acquire any land south of the river. To this question counsel for plaintiff objected, on the ground that the deed in question specifically excluded land on the south of the river. In view of the objection, counsel for the defendant withdrew his question, and now the plaintiff, Charles Theriot, can not be heard to say he did not know the land was short in acreage, when he purchased it.

"One of the plaintiffs, Hubert Theriot, purchased from J. Stanville Theriot, in 1914, Lot 3 of the Albert Theriot succession partition, and Hubert Theriot admitted that he then knew this lot did not embrace any land to the south of the Mermentau River. If Lot 3, which adjoins Lot 4, did not cover land to the south of the Mermentau River, and Hubert Theriot knew this, he must have known this was true of Lot 4.

"The record fails to show that Clabert Richard had any knowledge of the shortage of Lot 4 when he and the other plaintiffs purchased the property mentioned. He denied having any such knowledge, and the Court so finds."

The issues are clearly stated by the district judge, and the facts upon which his conclusions are grounded, we find, after a careful reading of the record, are accurately given and are well supported by the record.

It is contended by counsel for plaintiffs that a fair preponderance of the evidence fails to show that they had knowledge of the shortage in the acreage of the land prior to their purchase.

The evidence referred to by the district judge in his opinion shows that they knew of this shortage at that time with the exception of Clabert Richard, son-in-law of Charles Theriot, father of the other plaintiffs, and in whose favor judgment was rendered for the restoration of his proportionate share in the price paid for the land in question.

The district judge refers to the creation of a drainage district in 1912, which included the land in dispute.

A board for that district was appointed at that time to manage its affairs of which Mr. Alfred Richard was the president and Charles Theriot, one of the plaintiffs, a member.

A survey was made of the land in the district for the purpose of getting the correct acreage for a proposed tax levy. Mr. Ever-

ette made the survey, of which Mr. Charles Theriot had knowledge, as appears from his evidence.

It is shown by Mr. Alfred Richard that meetings were held in reference to this drainage district, and he remembers that Mr. Charles Theriot was present at one of them which took place at the schoolhouse at Grand Chenier, and that Mr. Everette, the surveyor, was there.

Mr. Richard testifies that the surveyor made a special trip to Cameron to look at the deeds concerning this land, and about which there was a general discussion.

In speaking about this "shortage" in the land, he says: "We knew it at the time when we surveyed it for an accurate survey."

Undoubtedly, that a shortage existed there, was a matter of common knowledge which was definitely demonstrated by the Everette survey. It is shown that Evariste Nunez was one of the unsuccessful bidders on the property purchased by the plaintiffs to whose testimony the district judge refers in his opinion. Mr. Nunez says that he knew then that there was a shortage in the acreage of the land.

According to Mr. Alfred Richard, people had heard of this shortage prior to the survey made by Everette by which this deficiency was then ascertained when the drainage district was organized. After this survey was made, it is impossible to believe that the community around there in general, and the plaintiffs in particular, who had adjoining property, were not aware that there was a deficiency in the acreage of this land.

A fair preponderance of the evidence shows that these plaintiffs, with the exception of Clabert Richard, had knowledge of this shortage prior to their purchase.

We therefore find no error in the judgment of the district court rejecting the demand of Charles Theriot, Hubert Theriot, and Emare Theriot, nor in that part of the judgment which is in favor of Clabert Richard, except as to the percentage allowed him, and as to the costs decreed against defendants.

Defendants filed a motion in this court asking for an amendment of the judgment in reference to the costs decreed against defendants, and in reference to the 8 per cent. granted in favor of Clabert Richard on the amount decreed in his favor.

The error pointed out in the motion exists, and the decree must be accordingly corrected.

It is therefore ordered, adjudged, and decreed that the judgment be amended by allowing Clabert Richard 5 per cent. per annum interest on his demand instead of 8 per cent. per annum; that the defendants be con-

demned to pay one-fourth of the costs of this suit, and that the other costs be paid by Charles Theriot, Hubert Theriot, and Emare Theriot, plaintiffs; and as thus amended the judgment be affirmed.